**In re ESTATE OF Jeffrey Robert ROCK, Deceased.**

No. C5–99–2081.

Court of Appeals of Minnesota.

July 3, 2000.

John J. Gores, Norris J. Skogerboe, Skogerboe & Skogerboe, Chtd., Blaine, MN (for appellants Lee Rock and Rachelle Lies).

Patrick J. McGuigan, McGuigan & Holly, P.L.C., St. Paul, MN (for respondent Jodi Rock).

Considered and decided by TOUSSAINT, Chief Judge, PETERSON, Judge, and HUSPENI, Judge.*

## OPINION

PETERSON, Judge.

Appellants Lee Rock and Rachelle Lies are the co-personal representatives of the estate of decedent Jeffrey Robert Rock, who died intestate on January 6, 1997. Appellants filed a petition seeking a determination that the dissolution judgment dissolving the marriage of Jeffrey Rock and respondent Jodi Rock divested respondent of her beneficiary interest in three individual retirement accounts (IRAs) owned by Jeffrey Rock when he died. This appeal is from the judgment denying that petition. We affirm.

## FACTS

Jeffrey Rock and respondent were married in 1986 and had two children together. Jeffrey Rock also had two older children. In January 1994, Jeffrey Rock opened three IRAs. He designated respondent as the primary beneficiary and his children as contingent beneficiaries of each of the IRAs.

In 1995, the marriage of Jeffrey Rock and respondent was dissolved by stipulated judgment and decree. The dissolu-

tion judgment contains the following provisions regarding the parties' retirement accounts:

> [Respondent] is the owner of a 401(K) account through her place of employment. Said account has a current value of approximately $8,410.00. [Jeffrey Rock] is the owner of an IRA which has a current value of approximately $16,000, some of which is nonmarital.[1]
>
> * * * *
>
> Each party is awarded all right, title and interest in and to any and all pension, profit sharing, retirement or savings plans in which they may have an interest, free and clear of any claim or right of the other party.

At the time of his death in 1997, Jeffrey Rock still owned the three IRAs, and the beneficiary designations had not been changed.

Respondent testified that after the dissolution, she and Jeffrey Rock maintained an amicable relationship and cooperated well in raising their children; Jeffrey Rock continued to help with repairs to the homestead that she had been awarded in the dissolution; and she and Jeffrey Rock agreed that each would remain as beneficiary of the other's IRAs or retirement accounts because their children were young and the proceeds would be needed to help support them.

Rudolph Jacobsz testified that about one month before Jeffrey Rock's death, he and Jeffrey Rock had a discussion about retirement plans during which Jeffrey Rock stated that the beneficiaries of his IRAs were respondent and his children, "Jodi and the kids." Jacobsz had known Jeffrey Rock since 1973, had worked for him from 1979 until sometime in 1995, and had lived with him from the fall of 1996 until his death.

The district court found:

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Although the dissolution judgment only refers to a single IRA, the parties agree it applies to the three IRAs at issue in this case.

5. The Dissolution Decree did not specifically terminate [respondent's] status as the primary beneficiary of said IRA's, nor did it specifically terminate [Jeffrey Rock's] status as the primary beneficiary of [respondent's] 401(k).

6. Following the dissolution of the parties' marriage, and continuing until the time of [Jeffrey Rock's] death, [respondent] remained as the primary beneficiary of the IRA's, and [Jeffrey Rock] remained as the primary beneficiary of [respondent's] equivalent retirement benefit account or plan.

7. That subsequent to the Dissolution Decree, [Jeffrey Rock] and [respondent] maintained an amicable relationship, and mutually agreed to retain each other as primary beneficiaries on their IRA accounts, retirement plans or equivalent cash accounts. In reliance on said agreement, both [respondent] and [Jeffrey Rock] did knowingly and intentionally continue to retain each other as the primary beneficiary on said accounts and/or plans.

8. After the dissolution of the parties' marriage, but before his death, [Jeffrey Rock] stated his intention to retain [respondent] as the primary beneficiary of his IRA's to [respondent] and others.

## ISSUES

I. Did the district court err in concluding that respondent was the primary beneficiary of Jeffrey Rock's IRAs?

II. Is the issue of the admissibility of Jacobsz's testimony properly before this court?

## ANALYSIS

### I.

▮ Whether a writing is ambiguous is a question of law subject to de novo review. *State by Humphrey v. Delano Community Dev. Corp.*, 571 N.W.2d 233, 236 (Minn.1997). If a writing is ambiguous, that is, it is reasonably susceptible to more than one interpretation based on its language alone, extrinsic evidence may be admitted to resolve the ambiguity. *Anderson v. Archer*, 510 N.W.2d 1, 3–4 (Minn.App.1993). "When extrinsic evidence is admitted, the meaning of ambiguous language is a question of fact." *Id.* at 4. These rules of contract construction apply when construing a stipulated provision in a dissolution judgment. *Starr v. Starr*, 312 Minn. 561, 562–63, 251 N.W.2d 341, 342 (1977); *see also Anderson*, 510 N.W.2d at 3–4 (applying rules of contract construction to interpretation of stipulated provision in dissolution judgment). A district court's findings of fact will not be reversed unless clearly erroneous. Minn. R. Civ. P. 52.01.

▮ In *Larsen v. Northwestern Nat'l Life Ins. Co.*, 463 N.W.2d 777 (Minn.App. 1990), *review denied* (Minn. Feb. 6, 1991) in deciding whether a stipulated provision in a dissolution judgment divested the ex-spouse of his beneficiary right in a life insurance policy, this court stated:

Ordinarily, marriage dissolution does not affect the right of the named beneficiary. When an insured does not change the beneficiary of his or her life insurance policy after a marriage dissolution, the ex-spouse beneficiary is entitled to the proceeds of the policy upon the death of the insured. This rule is based on the notion that the beneficiary's claim to the proceeds evolves from the terms of the policy rather than the status of the marital relationship.

However, under certain circumstances the ex-spouse beneficiary may have surrendered his or her right by a property settlement, which may or may not have been incorporated into the dissolution decree. "Whether a property settlement agreement should be deemed to bar the [ex-spouse beneficiary's right to the insurance proceeds] is a question of the construction of the agreement itself. Where there is no provision that the effecting of the settlement agreement

should deprive her of her rights as named beneficiary and she in fact remains named as beneficiary, the settlement agreement will not be given broader scope than its express terms specify."

*Id.* at 779–80 (quoting 5 George J. Couch et al., *Couch on Insurance (Second)* § 29:4, at 243 (1984)) (citations and footnote omitted).

Relying on *Larsen,* appellants argue that as a matter of law the dissolution judgment divested respondent of her beneficiary interest in the IRAs. The provision at issue in *Larsen* awarded each party "all right, title and interest in the insurance policies covering his or her respective life." The Larsen court, however, did not conclude that this language unambiguously divested husband of his beneficiary interest in wife's life insurance policy. Rather, in affirming the district court's order to pay wife's life insurance proceeds over to her estate, this court looked to the underlying facts. Those facts included the following: during the dissolution proceeding, wife asked her attorney if she could remove husband's name from her life insurance beneficiary designation, and her attorney advised her to not change the beneficiary designation until the dissolution was final; wife had indicated that if she died, she wanted her property to go to her mother; and wife died unexpectedly less than two months after entry of the final dissolution judgment.

■ Here, the provision in the dissolution judgment applicable to the IRAs awarded each party

all right, title and interest in and to any and all pension, profit sharing, retirement or savings plans in which they may have an interest, free and clear of any claim or right of the other party.

This provision is ambiguous in that it does not expressly refer to beneficiary designations.

In light of the ambiguity, whether the provision divested respondent of her beneficiary interest in the IRAs is a "fact-driven determination." *Mohamed v. Kerr,* 53 F.3d 911, 915 (8th Cir.1995). Respondent testified that following the dissolution, she and Jeffrey Rock maintained an amicable relationship and cooperated well in raising their children. Their children were young, ages three and seven when Jeffrey Rock died, and in need of support. Following the dissolution, Jeffrey Rock and respondent agreed to retain each other as primary beneficiaries on their IRA and retirement accounts. Shortly before his death, Jeffrey Rock told Jacobsz that "Jodi and the kids" were the beneficiaries of his IRAs. Because this evidence supports the district court's finding that the dissolution judgment did not remove respondent as the primary beneficiary of Jeffrey Rock's IRAs, the finding of fact is not clearly erroneous. *See National Auto. Dealers & Assocs. Retirement Trust v. Arbeitman,* 89 F.3d 496, 501 (8th Cir.1996) (citing parties' amicable relationship following divorce as support for finding that separation agreement did not divest wife of beneficiary interest in pension plan).

Appellants cite respondent's testimony that she understood the language awarding retirement and savings plans "free and clear of any claim or right of the other party" to mean that she would make no claim on Jeffrey Rock's IRAs as an admission that she relinquished her beneficiary interests in the dissolution. We disagree. Read in context, respondent's testimony referred to money or benefits to which the other party was entitled at the time of dissolution or retirement and did not encompass beneficiary interests.

Appellants also argue that the district court erred in enforcing an oral agreement entered into by respondent and Jeffrey Rock following their dissolution to redesignate each other as beneficiaries on their IRAs and retirement accounts. Appellants' argument mischaracterizes the district court's decision. The district court found that following the dissolution, Jeffrey Rock and respondent agreed to re-

tain, not reinstate or redesignate, each other as beneficiaries. This agreement is evidence that, at the time of dissolution, respondent and Jeffrey Rock did not intend to divest each other of their beneficiary interests. Because the dissolution judgment did not divest respondent of her beneficiary interests in Jeffrey Rock's IRAs, she remained as the beneficiary, and it was unnecessary for Jeffrey Rock to redesignate her as the beneficiary.

## II.

Respondent argues that the issue of the admissibility of Jacobsz's testimony is not properly before this court because appellants failed to make a motion for a new trial. We agree.

> [M]atters such as trial procedure, evidentiary rulings and jury instructions are subject to appellate review only if there has been a motion for a new trial in which such matters have been assigned as error.

*Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn.1986).

Citing *Pump–It, Inc. v. Alexander*, 230 Minn. 564, 572, 42 N.W.2d 337, 341–42 (1950), appellants argue that the new-trial-motion requirement does not apply to court trials because evidentiary rules are for controlling the jury, and greater latitude is permitted in the admission of evidence in a court trial. The *Pump–It* court addressed the showing required to obtain reversal based on the erroneous admission of evidence in a court trial. *Id.*

The appellant in *Pump–It* had made a motion for a new trial or amended findings, so the case did not address the new-trial-motion requirement. *Id.* at 565, 42 N.W.2d at 338. The reason for the new-

trial-motion requirement is "to provide the trial court with the opportunity to correct errors made during the course of the proceedings." *Schiltz v. City of Duluth*, 449 N.W.2d 439, 440 (Minn.1990). This rationale applies to court trials as well as jury trials. Consequently, the admission of Jacobsz's testimony is not subject to appellate review because appellants failed to make a motion for a new trial in which admitting the evidence was assigned as error.

Appellants argue that the trial court erred in denying them a continuance to produce evidence rebutting Jacobsz's testimony. Respondent notified appellants on July 19, 1999, that Jacobsz would be testifying at the trial on respondent's objection to appellants' petition. The trial was not held until September 14, 1999. Appellants had almost two months during which they could have taken steps to find out what Jacobsz's testimony would be, but the record does not show that they did so. We cannot conclude that the district court abused its discretion in denying appellants' request for a continuance.

## DECISION

The district court did not err by finding that respondent remained the primary beneficiary of Jeffrey Rock's IRAs. The issue of the admissibility of Jacobsz's testimony is not properly before this court

**Affirmed.**